# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JUSTIN LINDSEY, et al.,

    Plaintiffs,

v.

    Civil Action 2:15-cv-3065
    Judge George C. Smith
    Magistrate Judge Jolson

TIRE DISCOUNTERS, INC.,

    Defendant.

## ORDER

On February 17, 2017, Plaintiffs' filed a Motion to Compel Production of Newly Disclosed Documents. (Doc. 65). Specifically, Plaintiffs seek four categories of documents they allege are responsive to previously propounded document requests: (1) written correspondence regarding the reclassification of the Service Manager Position; (2) annually updated bonus compensation plans, (3) written spiffs; and (4) security system data showing arming and disarming by Service Managers. (*Id.* at 1). Defendant filed its Opposition to Plaintiffs' Motion to Compel and Alternative Motion for a Protective Order on February 23, 2017. (Doc. 67). Plaintiffs filed their Reply on March 6, 2017. (Doc. 70). For the reasons set forth below, the Motion to Compel Production (Doc. 65) is **GRANTED in part** and **DENIED in part**.

I.    **BACKGROUND**

On December 8, 2015, Plaintiffs filed this action under the Fair Labor Standards Act of 1938, amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), on behalf of all current and former Service Managers ("SMs") who work or worked for Defendant within the United States. (Doc. 1). Plaintiffs allege that Defendant violated the FLSA by failing to pay Plaintiffs overtime premium compensation

for hours worked over 40 in a single workweek. (*Id.* at 1). The SM position was created in approximately 2012 by Defendant and classified as exempt under the executive exemption, (Doc. 67 at 4), even though, according to Plaintiffs, the SMs "primarily perform duties that are non-exempt in nature." (Doc. 1 at 2).

On June 23, 2016, Plaintiffs served their First Request for Production of Documents on Defendant. (Doc. 65-1). Defendant served its Response on August 8, 2016 (Doc. 65-2), and thereafter produced documents on a rolling basis over the course of several months. (Doc. 65 at 2). On November 2, 2016, Defendant produced a privilege log that detailed two email chains being withheld based on work product and attorney-client privilege. (Doc. 65-5).

On January 31, 2017, Plaintiffs deposed Defendant's 30(b)(6) witness, James Ward, and allege in their Motion that his deposition testimony revealed the existence of several categories of documents that had not yet been produced. (*Id.*). The parties met and conferred regarding the potential production of these documents, and while "the parties made progress with respect to certain documents," it was represented to the Court that an impasse was reached regarding four categories of documents. (*Id.* at 3).

It is worth noting that prior to the dispute at issue, Defendant represented it had produced more than 190,000 documents. (Doc. 67 at 2).

## II. STANDARD

It has long been recognized that this Court has "broad discretion in determining the proper scope of discovery." *Marsden v. Nationwide Biweekly Admin., Inc.*, No. 3:14CV00399, 2016 WL 471364, at *1 (S.D. Ohio Feb. 8, 2016) (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). "In considering the scope of discovery, the Court may balance

Plaintiffs' 'right to discovery with the need to prevent fishing expeditions.'" *Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-CV-1131, 2015 WL 8259548, at *4 (S.D. Ohio Dec. 9, 2015) (citing *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009)) (quoting *Bush*, 161 F.3d at 367). Rule 26(b) of the Federal Rules of Civil Procedure articulates the permissible scope and limits of discovery in federal court:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26. However, "[a]s the advisory committee's notes clarify, the scope of discovery was not intended to include everything 'reasonably calculated to lead to the discovery of admissible evidence.'" *Quality Mfg. Sys., Inc. v. R/X Automation Sols., Inc.*, No. 3:13-CV-00260, 2016 WL 1244697, at *2 (M.D. Tenn. Mar. 30, 2016) (citing Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment). "For that reason, the advisory committee removed the 'reasonably calculated' language and restored the proportionality factors to their original place in defining the scope of discovery." *Id.* (internal quotations and citations omitted).

## III. DISCUSSION

As an initial matter, Defendant alleges that Plaintiffs' Motion is untimely, "as it has been made more than two weeks after the discovery deadline." (Doc. 67 at 1). Plaintiffs counter that because Defendant "withheld the *existence* of the documents until just before the close of discovery[,]" their Motion is timely. (Doc. 70 at 1) (emphasis in original). Further, Plaintiffs state they filed the instant Motion immediately upon reaching an impasse, pursuant to Local Rule 37.1. (*Id.* at 6).

3

Local Rule 37.1 states that any "[o]bjections, motions, applications or requests relating to discovery shall not be filed in this Court . . . unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences." Accordingly, the Court finds that any delay by Plaintiffs was in an effort to comply with Local Rule 37.1. The Court therefore deems Plaintiffs' Motion as timely.

**1. Written Correspondence Regarding Reclassification of the SM Position**

Plaintiffs seek production of written correspondence between Defendant and its in-house counsel regarding the classification of the SM position as non-exempt. (Doc. 65 at 3). Plaintiffs claim Defendant has waived any arguable privilege over these documents for three reasons: (1) Defendant failed to produce a privilege log, which constitutes a waiver; (2) there has been subject-matter waiver because Defendant "intentionally and voluntarily produc[ed] privileged communications with counsel regarding its consideration of the classification of the Service Manager Position;" and (3) privilege was waived "via [Defendant's] assertion of good faith and lack of willfulness affirmative defenses." (*Id.* at 4).

Defendant responds that the correspondence at issue has nothing to do with this lawsuit, and instead involved internal consultation with counsel regarding compliance with new Department of Labor ("DOL") regulations that were finalized in 2016. (Doc. 67 at 4–5). Consequently, Defendant argues the documents Plaintiffs seek are privileged and no waiver has occurred. (*Id.*). The Court notes that this dispute is over only two emails.

    A. *Privilege Log*

Plaintiffs allege they requested an updated privilege log listing the written correspondence at issue, but Defendant refused. (*Id.*). This refusal, Plaintiffs say, constitutes

waiver.

Defendant, on the other hand, takes the position that the correspondence at issue was not included in the original privilege log because it did not believe it was responsive to Plaintiffs' discovery requests. (Doc. 67 at 5). Despite this belief, Defendant represents that it provided an updated privilege log detailing the documents in dispute. (*Id.*).

In their Reply, Plaintiffs' acknowledge that an updated privilege log has been produced, but continue to argue that Defendant's "dilatory and obstructionist efforts" in failing to timely produce a complete privilege log waives any arguable privilege over the documents at issue. (Doc. 70 at 3). Here, however, Defendant produced a privilege log expeditiously once the responsiveness of the documents was called into question. Accordingly, "[t]he Court finds waiver is not appropriate for failure to disclose documents that were not [originally] deemed responsive, lest every supplemental response become the basis for waiver." *Casale v. Nationwide Children's Hosp.*, No. 2:11-CV-1124, 2014 WL 1308748, at *8 (S.D. Ohio Mar. 28, 2014).

      B. *Subject-Matter Waiver*

Plaintiffs argue there has been a subject-matter waiver of documents regarding the SM classification because Defendant "intentionally and voluntarily chose to waive any privilege/work product protection on documents regarding its consideration of Service Managers' exemption status under the FLSA[.]" (Doc. 65 at 5). In particular, Plaintiff relies on a portion of the parties' Joint Status Report Regarding Discovery submitted via e-mail to the Court on December 9, 2016, stating: "Defendant has agreed to produce those documents previously withheld as attorney-client privileged/work product protected which are responsive to Plaintiffs' discovery requests regarding Defendant's good faith and willfulness affirmative defenses." (Doc.

5

65-6 at 1–2). Plaintiffs take the position that because Defendant previously waived privilege involving documents regarding the SM classification, Defendant has likewise waived "any possible claim of privilege with respect to any documents similarly reflecting its re-consideration of the exempt classification of Service Managers." (Doc. 65 at 5).

Defendant responds that even though it produced privileged emails and documents with respect to the classification of the SM position, it reads the 2016 emails[1] currently being sought by Plaintiff as irrelevant to the creation or classification of the SM position as "exempt." (Doc. 67 at 7). Instead, Defendant suggests that "the requested emails are simply discussions about complying with [a] new DOL change to the 'salary basis test,' which applied to all exempt positions." (*Id.*). Not surprisingly, Plaintiffs believe there is no distinction between the subject matter of the documents previously produced and the documents currently sought.

The crux of the issue is how the "subject matter" of the first set of documents produced is defined. The United States Court of Appeals for the Sixth Circuit has said that "subject matter can be defined narrowly or broadly." *In re Grand Jury Proceedings Oct. 12, 1995,* 78 F.3d 251, 255 (6th Cir. 1996).

> The appropriate inquiry to determine the scope of the waiver is whether the client's disclosure involves the same subject matter as the information sought. *See U.S. v. Collis,* 128 F.3d 313, 320 (6th Cir. 1997); *see also In re Grand Jury Proceedings October 12, 1995,* 78 F.3d 251, 254 (6th Cir. 1996). Documents that have not been disclosed initially, but otherwise relate to the same subject matter of the litigation as those "privileged" documents that have been disclosed, may be subject to waiver. *In re Grand Jury,* 78 F.3d at 256.

*In re OM Sec. Litig.*, 226 F.R.D. 579, 592 (N.D. Ohio 2005). Here, Defendant previously disclosed and intentionally waived privilege over email correspondence dated February 24–28,

---

[1] The Court notes that despite Defendant's contention, the emails were actually created on June 30, 2015 and July 1, 2015, not 2016.

2015. (*See* Doc. 65-6). Upon review, there is explicit legal advice in this email correspondence regarding new DOL regulations that may affect the SM position.

The Court thus defines the subject matter as "advice regarding the SM classifications." And, in particular, the Court construes the scope of waiver to include not only information regarding the initial classification of the SM position but also the ongoing classification in response to the DOL regulations. The Court reviewed the relevant documents *in camera* and finds that they fit into that category. Thus, Defendant is directed to produce to Plaintiffs the two documents at issue.

        C. *Good-Faith Defense*

Based on the above determination that subject-matter waiver has occurred, it is unnecessary for the Court to analyze Plaintiffs' good-faith defense argument.

    **2. Annually Updated Bonus Compensation Plans**

In their Opposition, Defendant stated that it had provided the requested documents regarding bonus plans. (Doc. 67 at 7). Plaintiffs did not refute this in their Reply. Accordingly, the portion of Plaintiffs' Motion to Compel Production regarding annually updated bonus plans is **DENIED AS MOOT**.

    **3. Written Spiffs**

Plaintiffs allege that Mr. Ward testified that written "spiffs" exist that "are applicable to all Service Managers (as well as to certain non-exempt employees.)" (Doc. 65 at 13). Spiffs are defined by Plaintiffs as "temporarily available commission plans, rotated on a monthly basis, used to incentivize Service Managers and other employees to sell specific products/services." (*Id.*). Plaintiffs allege these documents are responsive to several of their Requests for Production

and are relevant to show: (1) the pressure placed on SMs to perform non-exempt sales duties to supplement their low base salaries; (2) the uniform treatment of SMs throughout the company; (3) the heavy sales focus of the SM position; (4) a comparison against earnings of hourly, non-exempt employees who were also entitled to spiffs; (5) the proper overtime/damages rate. (*Id*.; Doc. 70 at 6.).

Defendant defines spiffs as follows:

> Spiffs are incentive payments that change sometimes on a weekly basis. Spiffs can be for a specific product, and can apply to a particular position, such as the sales associates, and spiffs can also apply to a certain region or group of stores. Spiffs typically come straight from the manufacturer.

(Doc. 67 at 7).

Plaintiffs seek all "'spiffs' that applied to all employees who worked for Defendant at more than 100 stores for a three year period," regardless of whether the employee was an SM. (*Id.* at 8). Defendant argues that "trying to track down each and every written spiff that was in place over this time period would be a monumental and time-consuming task." (*Id.*). Accordingly, Defendant believes this request is not proportional to the needs of the case, and the majority of the spiffs requested will be irrelevant. (*Id.*). Finally, despite Plaintiffs' contention that Defendant "has refused to produce all written spiffs" (Doc. 65 at 13), Defendant alleges it already provided Plaintiffs with a spreadsheet "showing the time worked and calculating the overtime rate using the 'spiffs' that applied to the Service Managers." (Doc. 67 at 8).

In their Reply, Plaintiffs do not address Defendant's contention that the relevant information regarding the spiffs has been produced in a spreadsheet. Instead, Plaintiffs reiterate all the ways the spiffs are relevant to Plaintiffs' case. (*See* Doc. 70 at 6). Consequently, the parties are **DIRECTED** to meet and confer regarding whether a dispute remains.

### 4. Security System Data Showing Arming and Disarming by SMs

Finally, Plaintiffs seek data related to the SMs "unique code" that they utilize when they arm or disarm the security system at their stores when they arrive and leave. (Doc. 65 at 13). Plaintiffs argue that "[b]ecause Mr. Ward [] testified that Service Managers' time clock data does not capture all hours worked, data reflecting when SMs may have armed or disarmed the security system is relevant and necessary evidence to supplement the admittedly deficient time clock data to show when SMs arrived at and/or left the store each day." (*Id.* at 14).

Defendant responds that Plaintiffs are requesting alarm system data that is not in their custody or control. (Doc. 67 at 8). Even if it was, Defendant argues it had an accurate time keeping system in place and those records have already been provided to Plaintiff, making any additional requests unduly burdensome and overly-broad. (*Id.* at 9, 11). In support, Defendant notes that all employees clocked in and out every day, and the opt-in Plaintiffs admitted that they used the system and reviewed their times each week to ensure accuracy, making any necessary corrections. (*Id.* at 9; *see also* Docs. 9-1, 9-2, 9-3). Finally, Defendant argues that the alarm codes would not be an accurate indicator of actual time worked, since SMs do not always use their alarm code, SMs may give their code to other employees to turn off the alarm, and the codes aren't used every day the SMs work. (*Id.* at 10).

The testimony Plaintiff relies on to support the proposition that the time clock data does not capture all hours worked is as follows:

> Q: And service managers do they do bank runs, bank deposits?
> A: If they're the closing manager, yes.
> Q: They would do that after they clocked out at the end of the day; correct?
> A: That's correct. The general manager was responsible for every day except for the day that they were off.

(Doc. 65-3, PAGEID #: 725). Accordingly, it seems that Plaintiffs are attempting to argue that because the SMs do a bank run once a week after they have clocked out, the time clock data is inaccurate and thus the alarm data is needed. However, if the bank runs occur after the SM has clocked out and left the store, the SM presumably would have armed the security code when he or she left, meaning that data would be no more accurate than the time sheet data. Accordingly, Plaintiffs are directed to submit to the undersigned more specific evidence, if any exists, detailing that the alarm data is consistent and/or accurate enough to justify this discovery.

**IV. CONCLUSION**

For the reasons stated above, as to Plaintiffs' Motion to Compel (Doc. 65), the Court holds as follows: the portion of the Motion dealing with written correspondence regarding the reclassification of the Service Manager Position is **GRANTED**; the portion of the Motion dealing with annually updated bonus compensation plans is **DENIED as moot**; the parties are **DIRECTED** to meet and confer regarding the portion of the Motion dealing with written spiffs; and as to the portion of the Motion dealing with the alarm data, Plaintiffs are **DIRECTED** to submit via email (jolson_chambers@ohsd.uscourts.gov) any evidence detailing how the data sought is consistent and/or accurate enough to justify additional discovery, within seven (7) days of the date of this order.

IT IS SO ORDERED.

Date: May 3, 2017  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE